

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-27-2004

# Hoxholli v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4617

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Hoxholli v. Atty Gen USA" (2004). *2004 Decisions.* Paper 34.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/34

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4617

AFERDITA HOXHOLLI,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES,

Respondent

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A79-325-565)

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2004

Before: AMBRO, VAN ANTWERPEN and STAPLETON, Circuit Judges

(Opinion filed: December 27, 2004)

OPINION

AMBRO, Circuit Judge

Aferdita Hoxholli appeals the affirmance by the Board of Immigration Appeals

("BIA") of the decision by an Immigration Judge ("IJ") denying her application for

asylum and withholding of removal. Hoxholli is a citizen of Albania who entered the United States with a visitor visa on September 24, 2000. She overstayed her visa and, on October 30, 2001, the Immigration and Naturalization Service ("INS")[1] charged her with removal under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). Hoxholli conceded removability and sought relief in the form of asylum and withholding of removal.[2] The IJ denied both claims in an oral decision. Hoxholli appealed to the BIA, which affirmed without opinion the IJ's decision.

We have jurisdiction to review Hoxholli's petition for review under INA § 242, 8 U.S.C. § 1252. Where, as here, the BIA summarily affirms the IJ's decision, we review that decision. *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). For the reasons given, we deny Hoxholli's petition.

### Factual History

Hoxholli testified before the IJ as follows. In 1992 she became a supporter of the Democratic Party ("DP") in Albania and began attending meetings with her brothers.

---

[1]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and the INS's functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 §§ 441, 451 & 471, 116 Stat. 2135.

[2]Hoxholli also applied for relief under the Convention Against Torture (United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231)), but later dropped that claim.

The DP, under the leadership of Sali Berisha, was in power in Albania from 1992 to 1997. Hoxholli became a formal dues paying member of the DP in May 1998, after the Socialists took back power from the DP.

In the beginning of 2000, Hoxholli and one of her brothers (two brothers, Artori and Florenci, were involved with her DP activities) received two anonymous letters threatening harm if they continued to support the DP. In February 2000 anonymous callers three times threatened to destroy their family unless Hoxholli and her brothers ceased their DP activities. In June 2000 she was arrested at a DP protest. She was detained for seven hours and interrogated by a police inspector. When Hoxholli replied to a question that she wanted democracy in Albania, the inspector grabbed her by the hair, hit her in the face, and demanded to know "Why should a woman be involved in politics? Why are you doing this?" Before the officers released her, they threatened that she would be physically harmed if she continued to support the DP.

Following this interrogation, the store where she worked as a seamstress was bombed. She reported the bombing to the police, who told her that they would not help, and that she should go to DP leader Berisha if she needed help.

After the police refused to help her, Hoxholli left to hide with her mother's family in the city of Dures, Albania. She returned to Tirana only to arrange her trip out of Albania–she obtained a visitor visa at the U.S. Consulate and left for the United States on September 24, 2000.

**Discussion**

Section 208(b) of the INA, 8 U.S.C. § 1158(b), confers on the Attorney General the discretion to grant asylum to an alien who is a "refugee." An individual qualifies as a refugee if he or she is "unable or unwilling" to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

An applicant bears the burden of proving eligibility for asylum based on specific facts and credible testimony. 8 C.F.R. § 208.13(a); *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001). In order to demonstrate a well-founded fear of persecution, an applicant must satisfy three requirements: (1) he or she has a fear of persecution in his or her native country; (2) there is a reasonable possibility that he or she will be persecuted upon return to that country; and (3) the applicant is unwilling to return to that country as a result of his or her fear. 8 C.F.R. § 208.13(b)(2)(i). An alien who establishes past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1).

The eligibility threshold for withholding of removal is higher than for asylum. The Attorney General must determine that repatriation would jeopardize the alien's life or freedom on account of one of the protected grounds. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The applicant must therefore demonstrate a clear probability of persecution. *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998). Given this higher

4

standard, an applicant who does not qualify for asylum also will not qualify for withholding of removal.

We will uphold factual findings in an immigration matter if they are "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). We reverse a determination of the BIA/IJ if "the evidence not only supports [a contrary] conclusion, but compels it." *Id.* at 481 n.1 (emphasis omitted). Adverse credibility determinations are reviewed as well for substantial evidence, *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998), and we will uphold those findings unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The IJ did not find Hoxholli's testimony credible. Among the examples pointed out were the following:

- The IJ stated that Hoxholli "claims that the only time she came back from Dures after she left was when she came to the airport [in Tirana]." The IJ then pointed out that "yet, we have a visa that was issued at the American Consulate [in Tirana] on September 8th, 2000." The IJ then concluded: "[I]f the only time she ever appeared in Tirana was to leave at the airport on September 24th, how could she be at the American Consulate [on September 8th] getting the visa[?] I think the answer is she never left Tirana and never went to Dures." While the IJ erred in stating that Hoxholli claimed that the only time she came back to Tirana from Dures was to leave from the airport on September 24th, there is support for the IJ's conclusion that Hoxholli's claim that she fled to Dures was untrue. First, Hoxholli's testimony that she fled to Dures contradicted her previous testimony that she had lived in Tirana continuously from 1994 until she left for the United States. Second, Hoxholli's I-589 asylum application does not mention Dures.

5

• The IJ disbelieved Hoxholli's assertion that she did not have to answer any questions at the United States border about her reasons for or the intended duration of her visit.

• The IJ disbelieved Hoxholli's assertion that she was active in the DP in 1992 but did not actually join the party until 1998. The IJ's reasoning that a DP activist and campaign worker would be an official DP member is not unreasonable.

• Hoxholli testified that she paid monthly membership dues to the DP in 2000 from January until she left. When confronted with the fact that her DP membership card was paid through December 2000, when she had been in the United States since September 2000, she arguably changed her testimony when she claimed that her brother paid her dues through December.

• Hoxholli's brother Artori did not testify. Hoxholli initially claimed that he did not testify because he was not present in Albania when the alleged events happened. However, Hoxholli changed her testimony and claimed that he was ill when the IJ asked her why her brother could not testify as to his knowledge of her DP membership.

• The IJ observed that Hoxholli was "shifty," "not responsive," and that she repeatedly changed her testimony. We defer to the IJ's finding that Hoxholli's demeanor indicated that her testimony was not credible.

The IJ also based in part the denial of Hoxholli's asylum application on her failure to corroborate her testimony. Hoxholli offered reports from the State Department[3] and

_____

[3]Hoxholli argues that the IJ should have addressed the 2001 State Department Country Report for Albania in his decision. The Country Report states that police harassed some DP members and allegedly killed one DP member. It also states that some DP members were terminated from their official positions for political reasons. But because we affirm the IJ's finding that Hoxholli's story is not credible, the Country Report would only be relevant if it described a systematic government-based pattern or practice of persecution, or persecutions condoned by the government, so severe that an Albanian would have a well-founded fear of future persecution simply by being a member of the DP. It does not.

human rights groups describing the general situation in Albania. She offered certificates attesting that she is a member of activist groups involving formerly persecuted individuals. But other than her DP identification card, Hoxholli offered no documentation from the DP to corroborate her claims. She did not submit any of the threatening letters she allegedly received. She also offered no photographs, reports, or documents to verify that the store where she worked was bombed.

Furthermore, Hoxholli had members of her immediate family who could have given corroborating testimony, yet she failed to call them as witnesses. As noted, Hoxholli has two brothers who were also DP members. Artori, who lived in Patterson, New Jersey, close to the hearing site, did not testify. As already noted, Hoxholli initially claimed that he did not testify because he was not present in Albania when the alleged events happened. However, she changed her testimony and claimed that Artori was not feeling well when the IJ asked her why he could not testify as to his knowledge of her DP membership. Florenci, who was in the Dominican Republic when Hoxholli's case was heard, had allegedly been arrested once in Albania. Hoxholli offered no affidavits or letters from Florenci into evidence.

Hoxholli testified that her parents knew of the incidents about which she testified, and her parents were in the same building as Hoxholli's asylum hearing on the day of the hearing, yet they did not testify. When asked why she did not offer their testimony, Hoxholli said that it was because they were not present when she was arrested.

7

\* \* \* \* \*

As there is nothing in the record that compels us to conclude that the IJ's decision to deny asylum and withholding of removal was incorrect, we deny the petition for review.